UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRATEGIC BENEFIT SOLUTIONS CORP., | Hon. Joseph H. Rodriguez |
| Plaintiff, | Civil Action No. 19-14277 |
| v. | OPINION |
| BENEFITELECT, INC. and COMMUNICATION PARTNERS, INC., | |
| Defendants. | |

This matter comes before the Court upon the Motion to Dismiss, or in the Alternative, Transfer Venue filed by Defendants, Benefitelect, Inc. ("Benefitelect") and Communication Partners, Inc. ("Communication Partners"). [Dkt. No. 5.] The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with FEDERAL RULE OF CIVIL PROCEDURE 78. For the reasons set forth below, Defendants' Motion [Dkt. No. 5] will be denied in part and granted in part.

## I. Background

According to the Complaint, Plaintiff Strategic Benefit Solutions Corporation ("SBS") is a New Jersey corporation with its principal place of business in Atlantic City, New Jersey. Defendants Benefitelect and Communication Partners are Oregon Corporations with principal places of business in Bend, Oregon. In 2018, SBS engaged MetLife Insurance Company to provide critical illness benefit services for a discrete insurance program for Pennsylvania employees with the intention of modeling the program for national replication.

1

In furtherance of that plan, SBS hired Benefitelect and Communication Partners to provide a technology platform for the insurance program. The parties negotiated an initial fee agreement which, according to SBS, gave Defendants a 3% standard technology fee paid by MetLife CI Program and the work began, with a caveat to revisit the fee arrangement.  The Complaint alleges that although the Defendants' work was deficient and resulted in significant delays of the project, SBS wrote to Defendants on December 17, 2018 regarding payment of the 3% fee pursuant to the MetLife CI program and provided information from MetLife regarding the premiums collected through November 30, 2019; the result was a payment of approximately $2,270 by SBS to Defendants.

SBS claims that it paid the full fee owed, despite the deficient work.  However, on December 20, 2018, Defendants demanded a 50/50 split of SBS's commissions from the MetLife/CoPA work, in addition to the standard technology fee paid by MetLife. SBS did not agree to the 50/50 split and claims that, in response, Defendants threatened to cease working on the project and disparaged SBS, interfered with SBS's business and growth opportunities, and became extremely aggressive.

Defendants paint a different picture and allege that the fee agreement between the parties contemplated payment for the Defendants to establish and operate a benefit program and for out-of-pocket costs, together with a commission on all benefit packages enrolled in the insurance program and was evolving.  While SBS tendered some payment, it refused to make payments to the Defendants consistent with SBS's obligations under the payment agreement. The result, Defendants claim, was a $312,000.00 delta in the amount paid by SBS and the amount Defendants claim is owed.

To settle this obligation and resolve the dispute, Defendants engaged in a series of unsuccessful communications with SBS, through counsel. During one of the final communications, Defendants signaled that an action would be filed against SBS in Oregon if payment was not immediately tendered. Defendants claim, and the record reflects, that SBS requested time to perform the due diligence necessary to confirm the contours of the debt and Defendants agreed to hold off on filing the claim in Oregon.

Several days after Defendants granted SBS leave to respond to the demand, SBS filed the present matter in the Superior Court of New Jersey on May 10, 2019 alleging claims under the New Jersey Declaratory Judgment Act, N.J.S.A. § 2A:16-50, et seq. and Tortious Interference with Prospective Economic Advantage. On May 22, 2019, Defendants filed a lawsuit against SBS in the United States District Court for the District of Oregon (Case No. 6:19-cv-00797-MC). Defendants claim that notice of SBS's New Jersey State Court action was received on May 28, 2019- several days after the Oregon action was filed. On June 26, 2019, Defendants removed the SBS New Jersey Superior Court action to this Court.

The following restatement of relevant dates sets out the chronological communication between the parties and is not contested:

On May 1, 2019, Defendants reached out to Strategic Benefit Solutions Corporation's ("SBS") council and stated, among other things, that: (1) SBS owed $312,500 under an agreement; (2) if SBS did not pay the amounts owed within five days, a lawsuit would be brought against SBS in Deschutes County, Oregon; and (3) if SBS had any questions to contact Defendants' counsel. [Dkt. No. 5-2, ¶ 6.] Thereafter, on Friday, May 3, 2019, Defendants counsel received a call from Plaintiff's counsel.

[Dkt. No. 5-2, ¶ 7.] Plaintiff's counsel stated that she represented Plaintiff and requested information from Defendant's counsel. [Id.]

On May 6, 2020, Defendants' counsel emailed Plaintiff's counsel with the requested documents and stated, "if we cannot resolve this matter this week, we will proceed on to file suit to collect these amounts." [Dkt. No. 5-2, ¶ 8-9.] Later that same day, Plaintiff's counsel replied, "[t]hank you." [Id.]

On May 10, 2019, Defendant's counsel received an email from Plaintiff's former counsel stating that her firm no longer represented Plaintiff and that Plaintiff had retained new counsel. [Id. ¶ 10.] Defendants were not told that Plaintiff was no longer interested in negotiations, nor were Defendants informed that Plaintiff's new counsel was brought on to file a lawsuit against Defendants. [Id. ¶ 11, 13.]

On May 13, 2019, Plaintiff filed against Defendants in the Superior Court of New Jersey, Atlantic County. [Id. ¶ 13.] On May 22, 2019, Defendants filed a lawsuit against SBS in the United States District Court for the District of Oregon. [Id. ¶ 14.] After which, on June 26, 2019, Defendants timely filed a Notice of Removal to be removed to this Court. [Dkt. No. 1.] This motion to dismiss, or in the alternative transfer venue followed. [See generally Dkt. No. 5.]

## II.    Discussion & Analysis

Defendants, Benefitelect and Communication Partners, argue this case should be dismissed for improper venue under Federal Rule of Civil Procedure 12(b)(3), or in the alternative transferred pursuant to 28 U.S.C. § 1404(a).  Plaintiffs claim that because this action was the filed before Defendants' Oregon action, the First-filed rule demands that this case remain in the District of New Jersey. Defendants argue there are

4

applicable exceptions to the first-file rule because of the presence of bad faith on the part of Plaintiff's filing and seek dismissal or transfer to the District of Oregon.

As a preliminary matter, before the Court can address the motion to dismiss or transfer, because the parties have competing litigation in this Court and in the District of Oregon, the Court must address the First-filed Rule. The First-filed Rule requires that cases sharing substantially similar subject matter and subject to concurrent federal jurisdiction be decided by the court where the litigation was first filed. E.E.O.C. v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988). The rule allows for proper judicial administration and comity among federal courts of equal stature. Id.

Here, Plaintiff filed first in New Jersey and advances the First-filed Rule in opposition to Defendants' motion. Application of the First-filed rule considers several factors under 28 U.S.C. § 1404(a). Wheaton Indus., Inc. v. Aalto Sci., Ltd., No. 12-6965 (RMB/JS), 2013 WL 4500321, at *2, 2013 U.S. Dist. LEXIS 118524, at *5 (D.N.J. Aug. 21, 2013); Franceski v. Freedom Mortg. Corp., No. CV 18-13945 (NLH/JS), 2019 WL 2636740, at *3 (D.N.J. June 27, 2019) (citations omitted).

Once a court determines, under the factors, whether the first-filed rule is applicable, a "court may properly dismiss, stay[,] or transfer the second-filed action to avoid duplicative litigation under its 'inherent power.'" Id. (quoting Nature's Benefit, Inc. v. NFI, No. 06-4836 (GEB), 2007 WL 2462625, at *4, 2007 U.S. Dist. LEXIS 62871, at *8-9 (D.N.J. Aug. 27, 2007)). Ultimately, the decision of whether to apply the first-filed rule – and, therefore, whether to dismiss, stay, or transfer an action – is solely within a court's discretion. Univ. of Pa., 850 F.2d at 977.

I.      **The First-Filed Rule**

Defendants argue that this action should be dismissed or transferred in favor of the Oregon action because Plaintiff forum shopped, anticipatorily filed, and filed in bad faith; as such, Defendants argue the first-filed rule should not apply. The Court must determine whether these arguments constitute exceptional circumstances that warrant a departure from the first-filed rule. See Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013).

Generally, exceptions to the first-file rule occur where justice requires. FMC Corp. v. AMVAC Chem. Corp., 379 F.Supp.2d 733, 744 (E.D. Pa. 2005); see, e.g., Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., 502 F. App'x 201 (3d Cir. 2012) (holding that district court did not abuse its discretion in departing from "first-filed rule" under the circumstances). The exceptions are: (1) the existence of rare or extraordinary circumstances; (2) the first-filer engaged in inequitable conduct; (3) he acted in bad faith; (4) he engaged in forum shopping; (5) the later-filed action has developed further than the first-filed action; and (6) the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in a less favorable forum. E.E.O.C., 850 F.2d at 972, 976. The circumstances of this case qualify for an exception to the rule, "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." Id. at 976.

"Some evidence that a first-filed case was filed for the purpose of forum shopping . . . is necessary before courts find it was improperly anticipatory, and therefore warrant[s] a departure from the first-filed rule." Eagle Pharm., Inc. v. Eli Lilly & Co., No. CV 176415 JMV/MF, 2018 WL 3492145, at *4 (D.N.J. July 20, 2018) (quoting Koresko v. Nationwide Life Ins. Co., 403 F. Supp. 2d 394, 401 (E.D. Pa. 2005)).

First, Plaintiff does not contest that it received several emails in early May indicating that Defendants were imminently going to file suit. Defendants first emailed Plaintiff's counsel (and Plaintiff does not argue otherwise), "if SBS did not pay the amounts owed within five days, *a lawsuit would be brought against* SBS in Deschutes County, Oregon." [Dkt. No. 5-2, ¶ 6. (emphasis added).] Later, Defendants' counsel emailed, "if we cannot resolve this matter *this week, we will proceed on to file suit* to collect these amounts." [Id. ¶ 8-9. (emphasis added).] The record reflects that there was a strong likelihood that Defendants were going to follow through on the promise to file a court action in Oregon. It is reasonable to conclude that Plaintiff knew Defendants were about to file an action.

Second, Plaintiff argues that it has a legitimate tortious interference claim against Defendants that was properly filed in New Jersey. [See generally Dkt. No. 1-1, "N.J. Complaint."] The Court need not determine the validity of the claim or if it was properly filed; the Court must merely determine if that claim was brought at the time "in anticipation of the opposing party's imminent suit in another, less favorable, forum." E.E.O.C., 850 F.2d at 976. The Court finds that although Plaintiff's claims may be valid, because Plaintiff demonstrated bad faith and acted in an anticipatory manner to achieve a desired forum, the First Filed Rule does not apply.

Finally, Plaintiff alleges that Defendants began disparaging SBS to MetLife as early as January 2019, and Defendants' comments to MetLife hurt SBS's relationship with MetLife. [N.J. Complaint, ¶ 52.] Plaintiff further alleges that Defendants continued to disparage Plaintiff later in 2019. [Id. ¶ 55.] Yet, Plaintiff did not file a claim in New Jersey as soon as it appeared to be cognizable, but instead choose to wait. It was only after receiving several emails from Defendants about impending litigation that Plaintiff

7

suddenly filed its claim. Plaintiff offers no explanation for its decision to file in New Jersey. The evidence in the record strongly suggests that Plaintiff filed in anticipation of Defendants' promise of imminent litigation in Oregon. After receiving the email on Monday, May 6, 2019, in which Defendants threatened suit if the parties did not resolve the dispute, Plaintiff took less than five business days to file in the New Jersey Superior Court on Monday, May 13, 2019. [Dkt. No. 5-4, ¶ 8-9; N.J Complaint.]

For foregoing reasons, the Court finds that the first-filed rule does not apply because Plaintiff engaged in a bad faith anticipatory filing.

## II.    Rule 12 (b) (3) Dismissal or 28 U.S.C. § 1404(a) Transfer

Defendants argue that this action should be dismissed pursuant to Rule 12(b)(3) for lack of venue.  The Court will not dismiss pursuant to Rule 12 (b)(3) because both jurisdiction and venue properly lay in the District of New Jersey.  However, even if a plaintiff has brought his case in a proper venue, a district court may exercise its discretion and transfer the case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

The purpose of a discretionary transfer under 28 U.S.C. § 1404(a) is "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). The movant bears the burden of proving that a transfer is appropriate, and "in ruling on [a defendant's] motion the plaintiff's choice of venue should not be lightly disturbed." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (quotations omitted). Courts use a two-part § 1404(a) analysis: (1) determining if venue is proper in the proposed transfer court and (2) analyzing several public and private interest factors.

8

Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The Court analyzes each in turn and for the following reasons, the Court will transfer this case to the District of Oregon, pursuant to **28 U.S.C. § 1404(a).**

### a. Venue is proper in the District of Oregon

First, the Court must find that the requested venue is a venue where the claim could have been brought originally. Shutte, 431 F.2d at 24. Here, Plaintiff does not contest that the District of Oregon is a proper venue for Plaintiff's suit. [Dkt. No. 10, at 21.] Plaintiff merely argues that venue must be not only proper but also more convenient as defined by the public and private interest factors. [Id.]

### b. Public and Private Interest Factors

Section 1404(a) provides three statutory factors: "convenience of parties, convenience of witnesses, or interests of justice." 28 U.S.C. § 1404(a). The Court must consider these factors, along with several public and private interest factors. Jumara, 55 F.3d at 879. Courts decide motions to transfer under 28 U.S.C. § 1404(a) on an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622). The balancing of interest factors remains discretionary and is afforded substantial deference so long as the "balancing . . . is reasonable." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). The public interest factors are:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara, 55 F.3d at 879–80 (internal citations omitted).

The private interest factors are:

(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (internal citations omitted).

### i. Public Interest Factors

The public interest factors weigh in favor of transfer. Some public interest factors may "play no role" in a § 1404(a) analysis because they are neutral. See Lomanno v. Black, 285 F.Supp.2d 637, 647 (E.D. Pa. 2003); accord Am. High-Income Tr. v. AlliedSignal Inc., No. CIV.A. 00-690 GMS, 2002 WL 373473, at *5 (D. Del. Mar. 7, 2002). Here, the parties agree that factors (1), (5), and (6) are neutral. Plaintiff concedes that factor (3) weighs in Defendants' favor. The parties contest only factors (2) and (4).

Factor (2) considers the "practical considerations that could make the trial easy, expeditious, or inexpensive." Jumara, 55 F.3d at 879. Transferring this case to the District of Oregon, where it could be consolidated with the already pending Oregon case, is more expeditious than having two similar cases proceeding non-simultaneously. See Unlimited, 266 F. Supp. 3d at 798 (finding that consolidating similar cases in different forums is expeditious but refusing to transfer because the other filing was in anticipatory and in bad faith). Moreover, the results may conflict. Id. Despite the potential increased travel distance and cost, the parties will likely realize a reduction in cost resulting from the District of Oregon's diminished caseload, which results in a shorter duration of time to resolve disputes and therefore weighs in favor of transfer.

[See Dkt. No. 5-4 (demonstrating the statistical differences in caseload and resolution time between the District of Oregon and the District of New Jersey).]; see, e.g., Geraci v. Red Robin Int'l, Inc., No. 1:18-CV-15542-RMB, 2019 WL 2574976, at *3 (D.N.J. June 24, 2019).

Although Plaintiff concedes factor (3), Plaintiff argues that "relative congestion of the respective courts' dockets is . . . not a factor of great importance" on a motion to transfer. [Dkt. No. 10, at 26. (citing Clark v. Burger King Corp., 255 F. Supp. 2d 334, 339 (D.N.J. 2003).) Under normal circumstances, Plaintiff's argument has some force. However, the District of New Jersey is operating in a judicial emergence status. Compare Clark, 225 F. Supp. 2d 334 with Geraci, 2019 WL 2574976, at *3. The Judicial Conference of the United States has declared every judicial vacancy existing in District of New Jersey, where are currently 11 out of 17 authorized judgeships, as a "judicial emergency." Defendant correctly argues that the District of New Jersey is significantly busier and takes considerably longer to resolve claims than the District of Oregon [See Dkt. No. 5-4.]. Thus, due to this extraordinary circumstance, this factor weighs in favor of transfer.

Factor (4) considers "the local interest in deciding local controversies at home." Jumara, 55 F.3d at 879. The parties each have cognizable claims in the respective forums. Both forums have an indistinguishable interest in deciding each local controversy, so this factor appears neutral. However, Plaintiff's bad faith anticipatory filing in the Superior Court of New Jersey usurped Defendants' likely filing first in Oregon. Thus, in the interest of justice, the Court weighs this factor in favor of transfer.

### ii.  Private Interest Factors

The private interest factors weigh in favor of transfer. Only factors (1), (3), (5), and (6) are contested.

Factor (1) is "plaintiff's forum preference as manifested in the original choice." Jumara, 55 F.3d at 879. Plaintiff argues that a court should not take the decision to disturb a plaintiff's choice of venue lightly. [Dkt. No. 10, at 21.] The Court agrees; "[i]f a plaintiff chooses a home forum, its choice of venue is entitled to greater deference." Jumara, 55 F.3d at 879 (citation omitted). However, where a related action is pending in another forum, a plaintiff's choice is entitled to less deference in certain circumstances. Unlimited Tech., Inc. v. Leighton, 266 F. Supp. 3d 787, 796 (E.D. Pa. 2017). Defendants prefer the District of Oregon. [See Dkt. No. 5.] The Court gives deference to Defendants' choice despite the pending action in New Jersey because the Court has determined that Plaintiff's New Jersey filing was both in bad faith and anticipatory. See, e.g., Unlimited, 266 F. Supp. 3d at 796.

Factor (3) considers "whether the claim arose elsewhere." Jumara, 55 F.3d at 879. The parties each have claims that arose in the respective forums. Had Plaintiff's filing not been in bad faith and anticipatory, this factor would be neutral and weigh in favor of no transfer. But in the interest of justice, due to Plaintiff's bad faith anticipatory filing, the Court weighs this factor in favor of transfer.

Factor (5) contemplates "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. Both parties argue that transporting their witnesses will be difficult or impossible. [Dkt. No. 5, at 12; Dkt. No. 10, at 23.] "Party witnesses or witnesses who are employed by a party carry no weight in the balance of convenience analysis since each party is able, indeed obligated, to procure the attendance of its own

12

employees for trial." Am. High–Income Trust, 2002 WL 373473, at *5 (internal quotation omitted). As a result, all parties' employee and agent witnesses will not be factored into this analysis. Defendants do not identify any witnesses who are not employees or agents. [See Dkt. No. 5-3, at 3.] Plaintiff identifies MetLife executives located in New Jersey who would no longer be within subpoena range and would become unavailable as trial witnesses. [See N.J. Complaint at ¶¶ 52-55.] Thus, this factor weighs in favor of not transferring because only Plaintiff has witnesses that will be unavailable as trial witnesses in its opposed forum.

Factor (6) considers "the location of books and records." Jumara, 55 F.3d at 879. "[T]he technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." Lomanno, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) (quoting Am. High–Income Trust, 2002 WL 373473, at *5). This factor should be limited to the extent that the files could not be produced in the alternative forum. Jumara, 55 F.3d at 879. The Court notes that the relevant records regarding Defendants' claim would be in Oregon while the Plaintiff's records would be in New Jersey. However, no party has asserted that the relevant records could not be produced in the respective opposed forums and, therefore, the Court will consider this factor neutral.

### III.   Conclusion

On balance, the Court finds that the public and private interest factors weigh in favor of transfer to the District of Oregon. The overlapping issues of this case and the case already pending in the District of Oregon combined with Plaintiff's bad faith anticipatory filing warrant transfer to the District of Oregon pursuant to 28 U.S.C. § 1404(a).

For the reasons stated above, and in the interest of justice, Defendants' Motion [Dkt. No. 5] will be denied in part insofar as it seeks dismissal and granted in part. This matter will be transferred to the District of Oregon pursuant to 28 U.S.C. § 1404(a).

An appropriate order shall issue.

Dated: July 29, 2020

/s/ Joseph H. Rodriguez
Hon. JOSEPH H. RODRIGUEZ
United States District Judge